THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHERYL NORTHCRAFT,

    Plaintiff,

    v.

KIKOLO KIJAKAZI, Acting
Commissioner of Social Security,[1]

    Defendant.

: CIVIL ACTION NO. 1:21-CV-1535
: (JUDGE MARIANI)
: (Magistrate Judge Carlson)

## ORDER

**AND NOW, THIS** \_\_15th\_\_ **DAY OF JULY 2022**, upon review of Magistrate Judge Martin C. Carlson's Report and Recommendation ("R&R") (Doc. 23), Defendant's objection thereto (Doc. 24), and all relevant documents, **IT IS HEREBY ORDERED THAT**:

1. The R&R (Doc. 23) is **ADOPTED** for the reasons set forth therein as supplemented by this Order.

2. Defendant's objection to the R&R (Doc. 24) is **OVERRULED**. Defendant objects to Magistrate Judge Carlson's conclusion that this matter should be remanded for further consideration, asserting that the ALJ's decision satisfies the relevant substantial evidence standard and, therefore, should be affirmed. (*Id.* at 1-2.) The

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Court agrees with the R&R that remand is warranted based on the *de minimis* screening conducted at Step 2 of the sequential analysis and caselaw which provides that "all reasonable doubts regarding the sufficiency of the claim at Step 2 are to be resolved in favor of the claimant" (Doc. 23 at 16 (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)).) Further, review of ALJ Richard Guida's Decision shows that he acknowledged Plaintiff's occipital neuralgia diagnosis and treatment by a pain management specialist during the relevant time but he neglected to discuss the relationship between the diagnosis and numerous treatments Plaintiff had between her July 21, 2016, and December 1, 2016, visits at the Pain Institute of Central PA ("Pain Institute"). (ALJ Decision, R. 24 (Doc. 12-2 at 25).) The records from the Pain Institute indicate such a relationship based on findings of marked tenderness over the greater and lower occipital nerves and right paravertebral area at C2 and C3 and the plan recorded in the July 21, 2016, notes includes occipital nerve blocks and potential right cervical facet injections at C2 and C3. (R. 375 (Doc. 12-7 at 84).) Pain Institute records during the relevant time provide office visit notes for July 21, 2016, September 22, 2016, October 27, 2016, and December 1, 2016. (R. 374-383 (Doc. 12-7 at 83-92).) Presumably, these are the four visits noted by ALJ Guida. (*See* R. 24 (Doc. 12-2 at 25).) However, the office notes indicate that Plaintiff had additional treatment visits: September 22, 2016, notes state that Plaintiff

had occipital nerve blocks on July 26, 2016, and cervical facet injections on August 26, 2016; October 27, 2016, notes state that Plaintiff had an epidural L4/5 injection on October 3, 2016; and December 1, 2016, notes indicate that Plaintiff had a steroid injection on November 15, 2016, and had radiofrequency ablation of the greater and lesser occipital nerve sometime between the October and December office visits (R. 377, 379, 382 (Doc. 12-7 at 86, 88, 91).) Thus, the record shows that Plaintiff had more frequent medical treatment than recognized in the Decision. Moreover, in addition to the office notes which discuss Plaintiff's ongoing occipital neuralgia, Plaintiff had at least three treatments for this problem. ALJ Guida neither recognizes nor discusses these numerous treatments and notes. Regarding pain management treatment, the ALJ specifically references only a single lumbar epidural injection where Plaintiff reported 80% relief of her pain. (R. 24 (Doc. 12-2 at 25).) Regarding Plaintiff's occipital neuralgia, the ALJ notes only that Plaintiff reported no symptoms related to the condition at her primary care visit on June 8, 2016. Because probative evidence was not discussed in the Decision, the ALJ failed to adequately review records relevant to the Step 2 determination—a finding which renders the Court unable to find that his Decision is supported by substantial evidence. [2] This is an additional basis upon which remand is warranted.

---

[2] An ALJ must analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to

3. Plaintiff's appeal is **GRANTED**.

4. The Commissioner of Social Security's decision is **VACATED**.

5. This case is **REMANDED** to the Commissioner for further consideration consistent with this Order.

6. The Clerk of Court is directed to **CLOSE THIS CASE**.

                                _/s/ Robert D. Mariani_
                                Robert D. Mariani
                                United States District Judge

---

determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). The ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981).